## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FREDERICK WARHANEK, derivatively )
on behalf of VERISIGN, Inc., )
)
      Plaintiff, )
)
v. )    Civil Action No. 12-263-RGA-SRF
)
D. JAMES BIDZOS, WILLIAM L. )
CHENEVICH, ROGER H. MOORE, )
KATHLEEN A. COTE, JOHN D. ROACH, )
LOUIS A. SIMPSON, TIMOTHY )
TOMLINSON, MARK D. MCLAUGHLIN, )
RICHARD H. GOSHORN, CHRISTINE C. )
BRENNAN, AND KEVIN A. WERNER, )
)
      Defendants, )
)
    -and- )
)
VERISIGN, Inc., )
)
      Nominal Defendant. )

### REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Presently before the court in this shareholder derivative action brought under Section

14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78n(a) *et seq.*,

are the motions to dismiss the complaint under Federal Rules of Civil Procedure 23.1 and

12(b)(6) of defendants Richard H. Goshorn ("Goshorn"), Christine C. Brennan ("Brennan"), and

Kevin A. Werner ("Werner") (collectively, the "Executive Defendants") (D.I. 12), and

defendants D. James Bidzos ("Bidzos"), William L. Chenevich ("Chenevich"), Roger H. Moore

("Moore"), Kathleen A. Cote ("Cote"), John D. Roach ("Roach"), Louis A. Simpson

("Simpson"), Timothy Tomlinson ("Tomlinson"), and Mark D. McLaughlin ("McLaughlin") (collectively, the "Director Defendants"), together with nominal defendant VeriSign, Inc. ("VeriSign") (collectively with the Executive Defendants and the Director Defendants, "Defendants") (D.I. 8). For the following reasons, I recommend that the court grant Defendants' motions to dismiss and grant Warhanek's request to file an amended complaint[1] within thirty (30) days of the entry of this Report and Recommendation. In the event that an amended complaint is not timely filed, I recommend that the court dismiss the action.

## II.    BACKGROUND

### A.    The Parties

Plaintiff Warhanek is a resident of New Mexico and a current VeriSign shareholder who has owned VeriSign common stock at all relevant times for purposes of the instant action. (D.I. 1 at ¶ 9)

Nominal defendant VeriSign is a Delaware corporation with its principal place of business in Virginia. (*Id.* at ¶ 10) VeriSign provides internet infrastructure services that enable "network confidence and availability for mission-critical internet services, such as domain name registry services and infrastructure assurance services." (*Id.*)

Bidzos has served as VeriSign's Chief Executive Officer ("CEO") since August 2011, and has served as Chairman of the Board since August 2007. Bidzos served as Executive Chairman and CEO on an interim basis from June 2008 to August 2009, and was President of VeriSign from June 2008 to January 2009. (*Id.* at ¶ 11)

---

[1] At oral argument, Warhanek requested that the court grant leave to amend the complaint. (11/16/12 Tr. at 56:4-11)

2

McLaughlin served as President, CEO, and director of VeriSign from August 2009 until August 2011. (*Id.* at ¶ 18) McLaughlin was also President and Chief Operating Officer from January 2009 to August 2009, and provided consulting services to VeriSign from November 2008 to January 2009. (*Id.*) From January 2007 to November 2007, McLaughlin was VeriSign's Executive Vice President of Products and Marketing, and he served as Executive Vice President and General Manager of Information Services from May 2006 to January 2007. (*Id.*) Since August 2011, McLaughlin has not been involved with VeriSign.

Director Defendants Chenevich, Moore, Cote, Roach, Simpson, and Tomlinson have served as directors during the time period relevant to the instant action. (*Id.* at ¶¶ 12-17) Director Defendants Roach, Simpson, and Tomlinson are members of the Board's compensation committee (the "Compensation Committee"). (*Id.* at ¶¶ 15-17) These Director Defendants, together with Bidzos and McLaughlin, authorized the distribution of proxy statements for the annual shareholder meetings held on May 27, 2010 and May 26, 2011. (*Id.* at ¶ 19)

The Executive Defendants have also served in their executive capacities during the entire time period relevant to the instant action. Goshorn served as Senior Vice President, General Counsel, and Secretary of VeriSign since June 2007, Brennan served as Senior Vice President of Human Resources from February 1, 2010 to July 1, 2010, and Werner served as Senior Vice President of Corporate Development and Strategy from September 2007 to April 2011. (*Id.* at ¶¶ 20-22)

## B. The 2010 and 2011 Proxy Statements

Warhanek initiated this shareholder derivative action on behalf of VeriSign against certain current and former officers and directors to recover equitable relief for allegedly false and

3

misleading proxy statements filed by VeriSign. (D.I. 1 at ¶ 1) On April 14, 2010, VeriSign filed its proxy statement for its 2010 annual shareholder meeting (the "2010 Proxy Statement"), seeking shareholder approval for its annual incentive compensation plan ("AICP"), among other things. (*Id.* at ¶¶ 2, 29) VeriSign's shareholders approved the unchallenged AICP on or about May 27, 2010. (*Id.* at ¶ 32) The AICP provided an annual bonus framework for all of VeriSign's executive officers. (*Id.* at ¶ 2) Only one member of the Board, CEO Bidzos, was eligible for compensation under the proposed AICP at the time the 2010 Proxy Statement was approved. (D.I. 1 at ¶¶ 19, 29, 32)

The 2010 Proxy Statement indicated that performance-based compensation under the AICP was intended to be tax deductible pursuant to Section 162(m) of the Internal Revenue Code ("IRC"). (*Id.* at ¶ 31) However, Warhanek contends that awards granted to the Executive Defendants under the AICP are not tax deductible because the Director Defendants did not sufficiently disclose VeriSign's performance goals under the AICP. (*Id.* at ¶¶ 34-37) According to Warhanek, these performance goals grant the Compensation Committee broad discretion to determine which executive officers receive compensation.[2] (D.I. 1 at ¶¶ 35-39)

---

[2]The 2010 Proxy Statement provides the following list of possible performance goals:

net sales; revenue; revenue growth or product revenue growth; operating income (before or after taxes); pre- or after-tax income or loss (before or after allocation of corporate overhead and bonus); earnings or loss per share; net income or loss (before or after taxes); return on equity; total stockholder return; return on assets or net assets; appreciation in and/or maintenance of the price of shares of the Company's common stock or any other publicly-traded securities of the Company; market share; gross profits; earnings or losses (including earnings or losses before taxes, before interest and taxes, or before interest, taxes, depreciation and amortization); economic value-added models or equivalent metrics; comparisons with various stock market indices; reductions in costs; cash flow or cash flow per share (before or after dividends); return on capital

4

On April 13, 2011, VeriSign filed the proxy statement for its 2011 annual shareholder meeting (the "2011 Proxy Statement"), seeking shareholder approval for an Amended and Restated 2006 Equity Incentive Plan ("2011 Equity Plan"). (*Id.* at ¶¶ 3, 47) The 2011 Equity Plan amends VeriSign's 2006 Equity Incentive Plan (the "2006 Equity Plan;" together with the 2011 Equity Plan, the "Plans")). Both Plans provide for the grant of non-qualified and incentive stock options, restricted stock awards, restricted stock units, stock bonus awards, stock appreciation rights, and performance shares. (*Id.* at ¶¶ 41, 49) Both Plans reserve 27 million

---

(including return on total capital or return on invested capital); cash flow return on investment; improvement in or attainment of expense levels or working capital levels, including cash, inventory and accounts receivable; operating margin; gross margin; year-end cash; cash margin; debt reduction; stockholders equity; operating efficiencies; market share; customer satisfaction; customer growth; employee satisfaction; regulatory achievements (including submitting or filing applications or other documents with regulatory authorities or receiving approval of any such applications or other documents and passing pre-approval inspections (whether of the Company or the Company's third-party manufacturer) and validation of manufacturing processes (whether the Company's or the Company's third-party manufacturer's)); strategic partnerships or transactions (including in-licensing and out-licensing of intellectual property; establishing relationships with commercial entities with respect to the marketing, distribution and sale of the Company's products (including with group purchasing organizations, distributors and other vendors); supply chain achievements (including establishing relationships with manufacturers or suppliers of component materials and manufacturers of the Company's products); co-development, co-marketing, profit sharing, joint venture or other similar arrangements; financial ratios, including those measuring liquidity, activity, profitability or leverage; cost of capital or assets under management; financing and other capital raising transactions (including sales of the Company's equity or debt securities; factoring transactions; sales or licenses of the Company's assets, including its intellectual property, whether in a particular jurisdiction or territory or globally; or through partnering transactions); implementation, completion or attainment of measurable objectives with respect to research, development, manufacturing, commercialization, products or projects, production volume levels, acquisitions and divestitures; factoring transactions; or recruiting and maintaining personnel.

(D.I. 1, Ex. 2 at 9)

shares of VeriSign common stock for issuance, and all employees and non-employee directors

are eligible to receive awards under the 2006 and 2011 Equity Plans. (*Id.* at ¶¶ 40-43, 50-51)

VeriSign's non-employee directors are eligible to receive all awards under the Plans except for

incentive stock options. (*Id.* at ¶¶ 43, 50)

However, the Plans offer differing lists of performance criteria under which awards could

be granted. The 2006 Equity Plan provides for the grant of awards under twelve metrics:

> (1) Net revenue and/or net revenue growth; (2) Earnings per share and/or earnings
> per share growth; (3) Earnings before income taxes and amortization and/or
> earnings before income taxes and amortization growth; (4) Operating income
> and/or operating income growth; (5) Net income and/or net income growth; (6)
> Total stockholder return and/or total stockholder return growth; (7) Return on
> equity; (8) Operating cash flow return on income; (9) Adjusted operating cash
> flow return on income; (10) Economic value added; (11) Individual business
> objectives; and (12) Company specific operational metrics.

(*Id.* at ¶ 44) The performance goals under the 2011 Equity Plan, in contrast, are based on the

same list of forty-three criteria set forth in the AICP. (*Id.* at ¶ 55) The 2011 Equity Plan also

provides that each eligible participant may receive up to 1,500,000 shares in a calendar year,

equating to a maximum award of approximately $57 million per individual participant. (*Id.* at ¶¶

56-58) The complaint does not identify the maximum awards available under the 2006 Equity

Plan.

The shareholders approved the unchallenged 2011 Equity Plan on or about May 26, 2011.

(*Id.* at ¶ 53) On March 5, 2012, Warhanek initiated this action to challenge VeriSign's

representations regarding the potential tax treatment of compensation awarded pursuant to the

AICP and the 2011 Equity Plan under Section 162(m). (*Id.* at ¶ 73) Warhanek did not make a

demand on VeriSign's Board on the grounds that any such demand would be futile. (*Id.* at ¶ 59)

6

## III. LEGAL STANDARDS

### A. Demand Futility

Pursuant to Federal Rule of Civil Procedure 23.1, a shareholder plaintiff who sues the board of directors on behalf of the corporation must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors . . . and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3); *see also Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007). However, Rule 23.1 only addresses the adequacy of the plaintiff's pleadings. "The substantive requirements of demand are a matter of state law." *Blasband v. Rales*, 971 F.2d 1034, 1047 (3d Cir. 1992); *see also King v. Baldino*, 409 F. App'x 535, 537 (3d Cir. 2010).

Under Delaware law, "the entire question of demand futility is inextricably bound to issues of business judgment and the standards of that doctrine's applicability." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) (overruled on other grounds). In determining whether demand would have been futile,

[t]he trial court is confronted with two related but distinct questions: (1) whether threshold presumptions of director disinterest or independence are rebutted by well-pleaded facts; and, if not, (2) whether the complaint pleads particularized facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment.

*Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991) (overruled on other grounds). If either of these two inquiries is met, demand is excused. *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 820 (Del. Ch. 2005).

"[D]irectorial interest exists whenever divided loyalties are present, or where the director stands to receive a personal financial benefit from the transaction not equally shared by the

7

shareholders." *Blasband*, 971 F.2d at 1048. To find that demand is futile due to director interest or a lack of independence, a majority of the board of directors, or one-half of an evenly-numbered board, must be interested or lack independence. *Beam v. Stewart*, 845 A.2d 1040, 1046 n.8 (Del. 2004). "Disinterested 'means that directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally.'" *In re Dow Chem. Co. Deriv. Litig.*, C.A. No. 4349-CC, 2010 WL 66769, at *7 (Del. Ch. Jan. 11, 2010) (quoting *Aronson*, 473 A.2d at 812). However, a director is not financially interested solely because he receives customary compensation for his board service. *Seinfeld v. Slager*, C.A. No. 6462-VCG, 2012 WL 2501105, at *2 (Del. Ch. June 29, 2012). "Generally, the interest at issue must be material to the director, and materiality is assessed based upon the individual director's economic circumstances." *Freedman v. Adams*, C.A. No. 4199-VCN, 2012 WL 1099893, at *6 (Del. Ch. Mar. 30, 2012), *aff'd*, ___ A.3d ___, 2013 WL 144638 (Del. Jan. 14, 2013).

If the first prong of the *Aronson* test is not satisfied, a presumption arises that the board's actions were the product of a valid exercise of business judgment. *Beam*, 845 A.2d at 1049. To satisfy the second prong, a plaintiff must plead sufficient particularized facts to "raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." *In re J.P. Morgan*, 906 A.2d at 824 (quoting *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 286 (Del. Ch. 2003)) (internal quotations omitted). Each derivative claim must be evaluated independently to determine whether demand was futile as to that claim. *MCG Capital Corp. v. Maginn*, C.A. No. 4521-CC, 2010 WL 1782271, at *7 (Del. Ch. May 5, 2010). At the motion to dismiss stage, the court

8

considers the well-pleaded allegations of the complaint, the documents incorporated into the complaint by reference and judicially-noticed facts, drawing all reasonable inferences from the complaint's allegations in favor of the plaintiff. *See Weiss v. Swanson*, 948 A.2d 433, 441 (Del. Ch. 2008); *see also White v. Panic*, 783 A.2d 543, 549 (Del. 2001).

## B. Rule 12(b)(6)

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 555-56; *Iqbal*, 556 U.S. at 663. The court "need not accept as true threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.*

Following the Supreme Court's decision in *Iqbal*, district courts have conducted a two-part analysis in determining the sufficiency of the claims. First, the court must separate the factual and legal elements of the claim, accepting the complaint's well-pleaded facts as true and disregarding the legal conclusions. *Iqbal*, 556 U.S. at 663. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* at 664. Second, the court must determine whether the facts alleged in the complaint state a plausible claim by conducting a context-specific inquiry that "draw[s] on [the court's] experience and common

9

sense." *Id.* at 663-64; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV.    DISCUSSION

### A.    Demand Futility

#### 1.    The AICP

In support of their motions to dismiss, Defendants contend that the complaint contains insufficient facts to show that the Director Defendants were financially interested in the AICP because only executive officers were eligible to receive bonuses under the AICP, and Bidzos was the only VeriSign Board member who also served as an executive officer. (D.I. 9 at 10; D.I. 13 at 10-11) Warhanek does not respond directly to Defendants' arguments regarding demand futility for claims arising out of the AICP. (D.I. 17 at 16-18)

The AICP, which provides only for executive compensation, offers no financial benefit to directors. Bizdos is the only executive officer who also serves on the VeriSign Board. McLaughlin, a former executive officer and director, did not serve on the VeriSign Board at the time Warhanek commenced this action and is therefore not implicated by the director disinterestedness inquiry. *See La. Mun. Police Employees' Ret. Sys. v. Pyott*, 46 A.3d 313, 339 (Del. Ch. 2012) (appropriate inquiry is whether "as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."), *rev'd on other grounds by Pyott v. La. Mun. Police Employees' Ret.*

10

*Sys.*, — A.3d —, 2013 WL 1364695 (Del. Apr. 4, 2013); *see also Freedman v. Adams*, 2012 WL

1099893, at \*6 ("When assessing the independence and disinterestedness of directors under Rule

23.1, the Court considers the board's composition at the time the plaintiff brought the complaint,

not when the alleged wrong occurred.").

  Warhanek has, therefore, failed to establish that a majority of the Director Defendants

have a disabling self-interest that would excuse the demand requirement as to the claims

regarding the AICP.  The court must next determine whether the causes of action relating to the

AICP contain particularized facts sufficient to create a reasonable doubt that the challenged

transactions were the product of a valid exercise of business judgment.

  Warhanek contends that demand is excused under the second prong of *Aronson* because

disseminating a materially false and misleading proxy is a disclosure decision pursuant to Section

14(a) which is not protected by the business judgment rule.  (D.I. 17 at 19)  Alternatively,

Warhanek alleges that the complaint pleads sufficient facts to raise doubt that Defendants acted

in good faith by distributing Proxy Statements supporting executive compensation plans that did

not qualify for promised tax deductions under Section 162(m).  (*Id.* at 20)  Finally, Warhanek

contends that the Director Defendants committed waste by failing to ensure the tax deductibility

of the compensation under Section 162(m), thereby excusing the demand requirement.  (*Id.* at 21)

  Defendants respond that demand is not excused under the second prong of *Aronson*

because the Proxy Statements were neither false nor misleading, and the complaint contains no

allegations that the VeriSign Board intended to deliberately mislead the shareholders.  (D.I. 9 at

14-15; D.I. 13 at 12-13)  Defendants also allege that Warhanek's vague and factually deficient

allegations of waste fail to rebut the business judgment presumption.  (D.I. 9 at 16; D.I. 13 at 15-

11

16) Warhanek does not allege that demand on the VeriSign Board was excused for purposes of the unjust enrichment claim under the AICP. (D.I. 13 at 14)

The court begins its analysis by presuming that the business judgment rule applies, and the plaintiff must establish facts rebutting this presumption. *Aronson*, 473 A.2d at 812. Moreover, the court notes at the outset that derivative claims based on a proxy statement nondisclosure are not excused from the demand requirement under *Aronson*'s second prong. *See Abrams v. Wainscott*, C.A. No. 11-297-RGA, 2012 WL3614638, at *3 (D. Del. Aug. 21, 2012) (citing *Bader v. Blankfein*, 2008 WL 5274442, at *6 (E.D.N.Y. Dec. 19, 2008) and *Freedman v. Adams*, 2012 WL 1099893, at *16 n.155).

In the present matter, Warhanek fails to allege a misstatement or omission in the 2010 Proxy Statement constituting a disclosure violation. *See In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 133-34 (Del. Ch. 2009). The language of the 2010 Proxy Statement falls short of guaranteeing that the compensation awards may not be tax deductible under Section 162(m), stating that "[i]t is **intended** that compensation attributable to awards payable under the Plan will qualify as performance-based compensation under Section 162(m) of the Code." (D.I. 11, Ex. A at 21) (emphasis added). This court has found similar language to be insufficient to constitute false or misleading statements or omissions for purposes of excusing demand. *See Seinfeld v. O'Connor*, 774 F. Supp. 2d 660, 667 (D. Del. 2011) (determining that proxy statement did not contain false or misleading information or material omissions regarding compensation plans, where proxy statement merely suggested that Plan was "intended" to be tax deductible). Warhanek's failure to adequately plead a misstatement or omission precludes a finding that the 2010 Proxy Statement does not pass muster under the business judgment rule for purposes of the

12

demand futility analysis.

Warhanek's contention that payments under the AICP constitute waste also fails to meet the requirements of demand futility.[3] To excuse demand on a waste claim, the complaint "must allege particularized facts that lead to a reasonable inference that the director defendants authorized an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *In re Citigroup*, 964 A.2d at 136 (internal quotation marks omitted). In the instant matter, the complaint alleges that Defendants are liable for waste under the AICP for approving the AICP in a form that caused VeriSign to lose tax benefits. (D.I. 1 at ¶ 89)

It is well-established under Delaware law that "a board's decision on executive compensation is entitled to great deference." *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000) (holding that "[i]t is the essence of business judgment for a board to determine if a particular individual warrant[s] large amounts of money." (internal quotations omitted)). Moreover, the Court of Chancery has held that "the fact that higher taxes were paid, without more, is insufficient to sustain a waste claim." *Seinfeld v. Slager*, 2012 WL 2501105, at *13; *see also Freedman v. Adams*, 2012 WL 1099893, at *12 (holding that there is no fiduciary duty to minimize taxes). Warhanek does not allege that VeriSign received no consideration in exchange for the compensation awards, or that the dollar amounts awarded were disproportionate to employee incentives granted by Verisign's peers. Therefore, I recommend that the court also

---

[3]Contrary to Warhanek's contentions, this court has held that claims for corporate waste are subject to the business judgment rule, and a claim for waste "requires pleading particularized facts to create a reasonable doubt that the board's decisions were the product of a valid exercise of business judgment to excuse demand." *Abrams*, 2012 WL 3614638, at *4 (citing *White v. Panic*, 783 A.2d 543, 554-55 (Del. 2001)).

dismiss the waste claim as it pertains to the Executive Defendants, due to Warhanek's failure to demonstrate that demand is futile.

For the foregoing reasons, I recommend that the court dismiss the claims as they pertain to executive compensation awards under the AICP pursuant to Rule 23.1.

### 2. The 2011 Equity Plan

Defendants next contend that the Director Defendants' eligibility to receive awards under the 2011 Equity Plan, without more, is not enough to demonstrate improper self-interest. (D.I. 9 at 11; D.I. 13 at 10) According to the Director Defendants, nothing in the complaint suggests that they would receive any additional compensation by approving the 2011 Equity Plan, nor does the complaint allege that the Director Defendants' fees under the 2011 Equity Plan would be material or unreasonable. (D.I. 9 at 11-12) In response, Warhanek contends that every Director Defendant stands to receive a large financial benefit not shared by VeriSign's public shareholders under the 2011 Equity Plan, which provides for discretionary awards to non-employee directors as determined by the Compensation Committee. (D.I. 17 at 16-17)

Under Delaware law, stock option grants represent a material benefit to each individual director permitted to receive them, and no showing is required to demonstrate the materiality of the benefits. *See London v. Tyrrell*, C.A. No. 3321-CC, 2008 WL 2505435, at *5 (Del. Ch. 2008); *see also Ausikaitis on behalf of Masimo Corp. v. Kiani*, C.A. No. , 2013 WL 3753983, at *9 (D. Del. July 16, 2013). Generally, "demand is not excused simply because directors receive compensation from the company or an executive of the company." *Weiss*, 948 A.2d at 448. However, the Court of Chancery has drawn a distinction between ordinary director compensation and the receipt of stock options, observing that directors "have a strong financial incentive to

14

maintain the status quo by not authorizing any corrective action that would devalue their current holdings or cause them to disgorge improperly obtained profits." *Conrad v. Black*, 940 A.2d 28, 38 (Del. Ch. 2007).

The terms of the 2011 Equity Plan illustrate that the VeriSign Board was materially interested in self-dealing transactions regarding the Director Defendants' own compensation under the 2011 Equity Plan.[4] Section 4.2 of the 2011 Equity Plan provides that "[a]ny determination made by the Committee with respect to any Award will be made in its sole discretion at the time of grant of the Award . . . and such determination will be final and binding on the Company and on all persons having an interest in any Award under this Plan." (D.I. 11, Ex. B at A-2) The Compensation Committee's discretion to grant awards to the VeriSign Board is limited only by the caps set forth in § 3 of the 2011 Equity Plan, which provides that "[n]o person will be eligible to receive more than one million five hundred thousand (1,500,000) Shares in any calendar year under this Plan pursuant to the grant of Awards hereunder, other than

---

[4]The Director Defendants' interest in the 2011 Equity Plan is relevant to the demand futility inquiry in the present matter because the complaint specifically alleges claims against the Director Defendants in addition to its claims against the Executive Defendants. For instance, the complaint alleges that "[t]he acts of the Director Defendants in seeking stockholder approval of the 2011 Equity Plan without setting a reasonable maximum amount payable to each participant, and in permitting the granting of excessive compensation . . . constitutes a breach of their fiduciary loyalty to the Company," (D.I. 1 at ¶ 85); "[t]he Director Defendants approved the 2011 Equity Plan which provides for maximum payments to the Company's . . . directors in amounts so excessive and without correlation to the Company's performance, that no director of ordinary business judgment would award," (*Id.* at ¶ 90); and "[t]he Director Defendants . . . have been, and will be, unjustly enriched at the expense of and to the detriment of VeriSign, as a result of the acceptance of awards under plans . . ." (*Id.* at ¶ 93). These claims implicate the allegedly excessive compensation awards made to the Director Defendants, and pursuant to the Court of Chancery's recent decision in *Seinfeld v. Slager*, 2012 WL 2501105 (Del. Ch. June 29, 2012), they constitute separate transactions from the claims implicating only the Executive Defendants' interests, such as the tax deductibility of the compensation under Section 162(m) and the excessive nature of amounts awarded to the Executive Defendants.

new employees of the Company . . . who are eligible to receive up to a maximum of three million (3,000,000) Shares in the calendar year in which they commence their employment." (*Id.* at A-1)

Using the \$37.38 closing price per share of VeriSign stock on April 13, 2011, the Director Defendants had the discretion to grant themselves maximum awards of more than \$57 million per director. A potential award of this magnitude, which is more than double the potential awards per director in *Slager*, gives each Director Defendant a substantial financial interest in the director compensation awards. The Director Defendants' "theoretical ability to award themselves as much as tens of millions of dollars per year, with few limitations," leads to the conclusion that the Director Defendants are interested in the decision to award themselves substantial bonuses.[5] *Slager*, 2012 WL 2501105, at *12. Although the 2006 Equity Plan provided for similar awards to directors and would have remained in effect if the 2011 Equity Plan had not passed, the 2011 Equity Plan was necessary to replenish the 27 million shares

_____

[5]Pursuant to *Slager*, the shareholders' approval of the 2011 Equity Plan does not impact the Director Defendants' interestedness under the first prong of *Aronson*:

> Here, even though the stockholders approved the plan, the Defendant Directors are interested in self-dealing transactions under the Stock Plan. The Stock Plan lacks sufficient definition to afford the Defendant Directors protection under the business judgment rule. The sufficiency of definition that anoints a stockholder-approved option or bonus plan with business judgment rule protection exists on a continuum. Though the stockholders approved this plan, there must be some meaningful limit imposed by the stockholders on the Board for the plan to be consecrated by *3COM* and receive the blessing of the business judgment rule, else the "sufficiently defined terms" language of *3COM* is rendered toothless. A stockholder-approved carte blanche to the directors is insufficient. The more definite a plan, the more likely that a board's compensation decision will be labeled disinterested and qualify for protection under the business judgment rule.

*Slager*, 2012 WL 2501105, at *12.

available to fulfill the stock option awards. For these reasons, demand would be futile as to all claims premised on the Director Defendants' ability to award themselves compensation under the 2011 Equity Plan.

To the extent that the complaint alleges claims based on excessive executive compensation and non-tax deductibility of executive compensation, the Director Defendants have no interest that would excuse Warhanek from making a demand on the VeriSign Board. The Court of Chancery confronted circumstances similar to those presented here in *Slager*, in which the plaintiff alleged that both the employees and the directors had a disqualifying interest in compensation awards made pursuant to a Stock Plan. 2012 WL 2501105 at *10-14. The Court of Chancery determined that the directors were interested in the Stock Plan to the extent that they awarded themselves time-vesting restricted stock units because the Stock Plan placed "few, if any, bounds on the Board's ability to set its own stock awards." *Id.* at *11. However, the Court of Chancery treated awards of time-vesting stock units to employees under the Stock Plan as a separate transaction in which the directors had no interest. *Id.* at *14. In so ruling, the Court of Chancery rejected the plaintiff's contention that the directors were interested in the transaction because they themselves were general participants in the Stock Plan, even though they received no direct benefit from awarding the time-vesting stock options to non-director employees.[6] *Id.* at

---

[6]Warhanek relies primarily on case law from this court in support of his argument that demand is excused because the Director Defendants are interested in transactions regarding executive compensation due to their eligibility to participate in the 2011 Equity Plan. (D.I. 17 at 17-18) (citing *Resnik v. Woertz*, 774 F. Supp. 2d 614, 635 (D. Del. 2011); *Hoch v. Alexander*, C.A. No. 11-217, 2011 WL 2633722 (D. Del. July 1, 2011)). However, a more recent decision from the Court of Chancery in *Slager* yields a different result concerning the transaction regarding executive compensation. Furthermore, the law is well established that "the substantive rules for determining whether a plaintiff has satisfied [the demand futility] standard are a matter of state law," and are thus governed by case law from the Court of Chancery. *King v. Baldino*,

*13.

For the same reasons set forth in *Slager*, demand should not be excused as to claims regarding the compensation of the Executive Defendants under the first prong of *Aronson*. The court must therefore evaluate these claims under the second prong of *Aronson* to determine whether demand would have been futile.

With respect to the alleged disclosure violations, Warhanek fails to allege a misstatement or omission in the 2011 Proxy Statement that meets "the stringent standard of factual particularity required under Rule 23.1." *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 133-34 (Del. Ch. 2009). The language of the 2011 Proxy Statement expressly states that the compensation awards may not be tax deductible under Section 162(m): "The Compensation Committee **may approve** payment of compensation that exceeds the deductibility limitation under Section 162(m) in order to meet compensation objectives or if it determines that doing so is otherwise in the interest of our stockholders." (D.I. 11, Ex. B at 31) (emphasis added). This court has found similar language to be insufficient to constitute false or misleading statements or omissions for purposes of excusing demand. *See Seinfeld v. O'Connor*, 774 F. Supp. 2d 660, 666-67 (D. Del. 2011) (determining that proxy statement did not contain false or misleading information or material omissions regarding compensation plans, where proxy statement expressly stated that all or a portion of the bonuses awarded might not be deductible). Warhanek's failure to adequately plead a misstatement or omission precludes a finding that the 2011 Proxy Statement does not pass muster under the business judgment rule for purposes of the

_____

409 F. App'x 535, 537 (3d Cir. 2010) (internal citations and quotation marks omitted). Therefore, the court will apply the *Slager* analysis to the facts of the pending matter.

18

demand futility analysis.

Warhanek's contention that payments under the 2011 Equity Plan constitute waste also fails to meet the requirements of demand futility.[7] To excuse demand on a waste claim, the complaint "must allege particularized facts that lead to a reasonable inference that the director defendants authorized an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *In re Citigroup*, 964 A.2d at 136 (internal quotation marks omitted). In the instant matter, the complaint alleges that Defendants are liable for waste under the 2011 Equity Plan for approving it in a form that caused VeriSign to lose tax benefits. (D.I. 1 at ¶¶ 89-90)

It is well-established under Delaware law that "a board's decision on executive compensation is entitled to great deference." *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000) (holding that "[i]t is the essence of business judgment for a board to determine if a particular individual warrant[s] large amounts of money." (internal quotation marks omitted)). Moreover, the Court of Chancery has held that "the fact that higher taxes were paid, without more, is insufficient to sustain a waste claim." *Seinfeld v. Slager*, 2012 WL 2501105, at *13; *see also Freedman v. Adams*, 2012 WL 1099893, at *12 (holding that there is no fiduciary duty to minimize taxes). Warhanek does not allege that VeriSign received no consideration in exchange for the compensation awards, or that the dollar amounts awarded were disproportionate to employee incentives granted by Verisign's peers. Therefore, I recommend that the court also

---

[7]Contrary to Warhanek's contentions, this court has held that claims for corporate waste are subject to the business judgment rule, and a claim for waste "requires pleading particularized facts to create a reasonable doubt that the board's decisions were the product of a valid exercise of business judgment to excuse demand." *Abrams*, 2012 WL 3614638, at *4 (D. Del. Aug. 21, 2012).

19

dismiss the waste claim as it pertains to the Executive Defendants, due to Warhanek's failure to demonstrate that demand is futile.

For the foregoing reasons, I recommend that the court dismiss the claims as they pertain to executive compensation awards under the 2011 Equity Plan pursuant to Rule 23.1. The only remaining claims are Warhanek's claims against the Director Defendants relating to the 2011 Equity Plan.

### B. Failure to State a Claim

#### 1. Section 14(a) and Breach of Fiduciary Duty

Warhanek's § 14(a) claim and the breach of fiduciary duty claim pertain to alleged misrepresentations in the Proxy Statements and the tax deductibility of executive compensation under§ 162(m). Having recommended dismissal of claims pertaining to executive compensation under Rule 23.1, a further analysis of these claims under Rule 12(b)(6) is unnecessary, and the court will proceed with a 12(b)(6) analysis of the corporate waste and unjust enrichment claims.[8]

#### 2. Corporate Waste

"The pleading burden on a plaintiff attacking a corporate transaction as wasteful is necessarily higher than that of a plaintiff challenging a transaction as 'unfair' as a result of the directors' conflicted loyalties or lack of due care." *Harbor Fin. Partners v. Huizenga*, 751 A.2d 879, 892 (Del. Ch. 1999) (citing *In re 3COM Corp. S'holders Litig.*, 1999 WL 1009210, at *11 (Del. Ch. Oct. 25, 1999)). To plead a claim of waste, the plaintiff must allege facts showing that

---

[8]The court may proceed with an analysis of the remaining corporate waste and unjust enrichment claims because diversity jurisdiction has been established. (D.I. 1 at ¶ 7); *Cf. Seinfeld v. O'Connor*, 774 F. Supp. 2d 660, 673 n.12 (D. Del. 2011) (dismissing state law causes of action for lack of diversity jurisdiction after federal claims were dismissed).

"no person of ordinary sound business judgment" could view the benefits received in the transaction as "a fair exchange" for the consideration paid by the corporation. *Michelson v. Duncan*, 407 A.2d 211, 224 (Del. 1979) (internal quotations omitted). However, a claim for waste survives a motion to dismiss unless "there is no reasonably conceivable set of facts under which [the plaintiff] could prove a claim of waste." *Weiss v. Swanson*, 948 A.2d 433, 450 (Del. Ch. 2008).

In support of their motion to dismiss, the Director Defendants contend that the complaint contains no facts supporting an actionable claim related to excessive payments to VeriSign's directors. (D.I. 9 at 27) Specifically, the Director Defendants allege that the complaint fails to state that the maximum amounts have actually been awarded or will be awarded. In response, Warhanek contends that whether the amounts under the 2011 Equity Plan were awarded yet is not relevant, because it is sufficient that under the 2011 Equity Plan those amounts may be awarded. (D.I. 17 at 32)

In the present matter, Warhanek fails to plead facts indicating that VeriSign actually incurred a loss as a result of the Director Defendants' actions. Under Delaware law, a waste claim is dismissed when there is no allegation that losses were actually incurred. *See Boeing Co. v. Shrontz*, C.A. No. 11273, 1992 WL 81228, at *4 (Del. Ch. Apr. 20, 1992) ("Second, there is no allegation that such losses were, in fact, incurred."). In light of the foregoing, I recommend that the court dismiss Warhanek's claim for corporate waste.

### 3.    Unjust Enrichment

Unjust enrichment is defined as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or

21

equity and good conscience." *Tolliver v. Christina Sch. Dist.*, 564 F. Supp. 2d 312, 315 (D. Del. 2008) (citations omitted).   To establish a claim for unjust enrichment, a plaintiff must show: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).   Unjust enrichment is a theory of recovery to remedy the absence of a formal contract. *Bakerman v. Sidney Frank Importing Co., Inc.*, C.A. No. 1844-N, 2006 WL 3927242, at *18 (Del. Ch. Oct. 10, 2006).   Therefore, claims of unjust enrichment may survive a motion to dismiss when the validity of the contract is in doubt or uncertain. *In re Student Fin. Corp.*, C.A. No. 03-507-JJF, 2004 WL 609329, at *7 (D. Del. Mar. 23, 2004).

In support of their motion to dismiss, the Director Defendants contend that Warhanek's claim for unjust enrichment fails to allege that the Director Defendants did not provide the services promised in exchange for the compensation awards pursuant to the terms of the 2011 Equity Plan, and fails to establish a wrongful enrichment. (D.I. 9 at 29)   Warhanek makes no allegations regarding the application of the unjust enrichment claim to the Director Defendants. (*Id.* at 33-34)

Warhanek has failed to establish an impoverishment in support of his unjust enrichment claim because the complaint contains no allegations that stock option awards were actually made to the Director Defendants.   Therefore, Warhanek's claim for unjust enrichment must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, I recommend that the court grant the motions to dismiss and

grant Warhanek's request to amend the complaint within thirty (30) days of the entry of this

Report and Recommendation.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1. The failure of a party to object to legal conclusions may

result in the loss of the right to de novo review in the district court. *See Henderson v Carlson*,

812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir.

2006). The parties may serve and file specific written objections within fourteen (14) days after

being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The

objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the court's Standing Order In Non Pro Se Matters For

Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is

available on the court's website, www.ded.uscourts.gov.

Dated: September 18, 2013

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE